[No. C024109. Third Dist. Oct. 9, 1998.]

CALIFORNIA FIRST AMENDMENT COALITION, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
PETE WILSON, as Governor, etc., Real Party in Interest.

162

**COUNSEL**

Skjerven, Morrill, MacPherson, Franklin & Friel, Edward P. Davis, Jr., and James M. Chadwick for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, Linda A. Cabatic, Assistant Attorney General, and Ted Prim, Deputy Attorney General, for Real Party in Interest.

**OPINION**

**RAYE, J.**—This case requires us to examine the delicate balance in a democracy between knowledge and power, accountability and quality decisionmaking. The issue arises in the midst of conflict that frequently results when a government agency denies access to documents desired by the press.

The California First Amendment Coalition (CFAC) seeks access to the documents, invoking the statutory imperative that "access to information concerning the conduct of the people's business is a fundamental and necessary right" (Gov. Code, § 6250)[1] and stressing the abhorrence of "government by secrecy" reflected in numerous cases. The Attorney General, as counsel for the Governor, reminds us that while open government should be the norm, it is not an absolute; government must maintain some measure of secrecy to be effective.

The narrow issue before us is whether the California Public Records Act (§ 6250 et seq.) compels the Governor to disclose the names and qualifications of applicants for a temporary appointment to a local board of supervisors, an appointment necessitated by the death of an elected supervisor. Governor Pete Wilson denied CFAC's request for disclosure of the applicants' names, claiming their applications are exempt from disclosure as correspondence (§ 6254, subd. (*l*)) and asserting a deliberative process privilege (§ 6255; *Times Mirror Co.* v. *Superior Court* (1991) 53 Cal.3d 1325 [283 Cal.Rptr. 893, 813 P.2d 240]). Acceding to the Governor's position, the trial court denied CFAC's petition for a writ of mandate compelling disclosure. We shall affirm.

### FACTS AND PROCEDURAL BACKGROUND

A member of the Plumas County Board of Supervisors died on September 5, 1995. Governor Pete Wilson was charged with filling the vacancy. (§ 25060.) On October 16, 1995, CFAC requested the Governor to disclose "any document containing the names of those who have applied for the position." The Governor denied the request on October 27, asserting the request was ambiguous and sought information protected from disclosure under section 6254, subdivisions (c) and (k), and section 6255. Subsequently, on November 29, the Governor made an appointment to fill the vacancy.

CFAC filed a petition for a writ of mandate on February 15, 1996. In his opposition, the Governor repeated the grounds asserted in his earlier letter denying the request and advanced an additional basis, the exemption for correspondence to the Governor, set further in section 6254, subdivision (*l*).

In support of his opposition, the Governor submitted declarations of his appointments secretary and her assistant. According to the appointments secretary, the consideration of individuals for a Governor's appointment

---

[1]Further references to sections of an undesignated code are to the Government Code.

typically begins with a letter from the prospective appointee to the Governor's appointments secretary requesting an application form. The appointments secretary replies by letter enclosing the application form. Following this exchange of correspondence, an appointment file is opened, which becomes the repository for the application form, letters of recommendation, interviews and notes from staff members. The files are "maintained in the strictest confidence." Names of applicants "are kept confidential in and outside the office, in part, to encourage qualified applicants to seek consideration." The policy of confidentiality has obtained during the last four gubernatorial administrations at least. No additional evidence was offered.

The trial court considered the request as embracing two categories of documents: 1) written applications for appointment submitted by the applicants; and 2) written materials concerning the suitability of the applicant. In its written ruling the court concluded the first category was exempt from disclosure under the correspondence exemption set forth in section 6254, subdivision (*l*), and determined the second category constituted "executive communications" exempt from disclosure under section 6255. The court entered judgment in favor of the Governor. CFAC thereupon timely filed the present petition for writ of mandate, requesting this court to reverse the judgment and direct the trial court to issue a writ of mandate compelling the Governor to provide it with records containing the names of applicants for the vacancy including information submitted by the applicant as documenting the applicant's fitness for the position.

DISCUSSION

I

We first consider the Governor's assertion that CFAC's request is excessively vague and overbroad. Citing the decisional requirement of a "specific and focused request" (*Rogers* v. *Superior Court* (1993) 19 Cal.App.4th 469, 481 [23 Cal.Rptr.2d 412]), the Governor complains that CFAC's request lacks the required focus and is a "model of ambiguity," thereby justifying its denial.

Unquestionably, public records must be described clearly enough to permit the agency to determine whether writings of the type described in the request are under its control. Section 6257 compels an agency to provide a copy of nonexempt records upon a request "which reasonably describes an identifiable record, or information produced therefrom . . . ." However, the requirement of clarity must be tempered by the reality that a requester, having no access to agency files, may be unable to precisely identify the

documents sought. Thus, writings may be described by their content. The agency must then determine whether it has such writings under its control and the applicability of any exemption. An agency is thus obliged to search for records based on criteria set forth in the search request.[2]

The claim of overbreadth raises a separate issue. A clearly framed request which requires an agency to search an enormous volume of data for a "needle in the haystack" or, conversely, a request which compels the production of a huge volume of material may be objectionable as unduly burdensome. (*American Civil Liberties Union Foundation* v. *Deukmejian* (1982) 32 Cal.3d 440 [186 Cal.Rptr. 235, 651 P.2d 822].) Records requests, however, inevitably impose some burden on government agencies. An agency is obliged to comply so long as the record can be located with reasonable effort. (*State Bd. of Equalization* v. *Superior Court* (1992) 10 Cal.App.4th 1177, 1186 [13 Cal.Rptr.2d 342].)[3]

■ CFAC's request is neither fatally vague nor overbroad. Reasonably construed, it sought the production of all documents containing information regarding applicants for appointment to the vacant county supervisor's office including, specifically, "information submitted by the applicant as documenting his or her fitness for the position."[4] True, taken literally, a request for "any document containing the names of those who have applied for the position" could be construed to include telephone directories, rolodex entries and a host of similar writings. However, such a construction would not be reasonable in light of the clear purpose of the request as explained in CFAC's three-page letter. There is no indication the Governor was perplexed. In his opposition to CFAC's petition, he describes the information requested: "the names of applicants considered by the Governor in filling a vacancy on the Plumas County Board of Supervisors (and their application forms)." Feigned confusion based on a literal interpretation of the request is

---

[2]In federal litigation under the Freedom of Information Act an agency may be compelled to prepare a Vaughn index which identifies the author, recipient, and subject matter of each document meeting the request criteria. Having confirmed and identified the existence of documents comporting with the request, the agency then asserts any claim of exemption. (*Times Mirror Co.* v. *Superior Court, supra,* 53 Cal.3d at p. 1356.)

[3]The breadth of a request may affect the balancing of interests required by section 6255. The public interest in nondisclosure may be less where the request is carefully focused and confined to a few documents. (*Times Mirror Co.* v. *Superior Court, supra,* 53 Cal.3d at pp. 1344-1345.)

[4]Although the request could be taken to include internal memoranda between the Governor and staff members, CFAC later made clear it sought only the names and application materials submitted by applicants for the position. According to counsel for CFAC, "We are only asking for the application the potential candidates are submitting, and the documents submitted along with the application form . . . ."

not grounds for denial. The only significant uncertainty presented by CFAC's request was whether it sought not only information provided by applicants (the applications and associated letters) but also written assessments of the applicants prepared by the Governor's staff and others. The Governor clearly intended to deny access to both categories of information. A clarification of the request would not have affected that outcome.

## II

As clarified in the trial court, CFAC seeks the applications of persons who sought appointment to the vacant Plumas County Supervisor office.[5] The Governor acknowledges the requested documents are public records.[6] Accordingly, the act mandates access to them unless they fall within one or more categories of exempt records. Two general exceptions to the policy of disclosure are set forth in the act. Section 6254 enumerates specific categories of exempt records, while section 6255 "establishes a catch-all exception that permits the government to withhold a record if it can demonstrate that 'on the facts of a particular case the public interest served by not making the record public *clearly outweighs* the public interest served by disclosure of the record.'" (*CBS, Inc.* v. *Block* (1986) 42 Cal.3d 646, 652 [230 Cal.Rptr. 362, 725 P.2d 470], original italics.) In considering claims for exemption, we are guided by the general principle that "exemptions are construed narrowly, and the burden is on the public agency to show that the records should not be disclosed." (*Rogers* v. *Superior Court, supra,* 19 Cal.App.4th at p. 476.) The Governor claims, and the trial court determined, that the requested documents constitute correspondence within the meaning of section 6254, subdivision (*l*) and are protected by the deliberative process privilege, an exemption recognized by the Supreme Court based on the language of section 6255. We consider each claim in turn.

### A. *The Correspondence Exemption*

Section 6254, subdivision (*l*) provides an exemption for "[c]orrespondence of and to the Governor or employees of the Governor's office." In *Times Mirror Co.* v. *Superior Court, supra,* 53 Cal.3d at page 1337, the

---

[5]While the analysis herein is so premised, it would also apply to other documents: e.g., staff appraisals and letters of recommendation.

[6]"'Public records' includes any writing containing information relating to the conduct of the public's business prepared, owned, used or retained by any state or local agency regardless of physical form or characteristics. 'Public records' in the custody of, or maintained by, the Governor's office means any writing prepared on or after January 6, 1975." (§ 6252, subd. (d).)

Supreme Court determined that correspondence refers to "communication by letters," rejecting an argument that correspondence encompasses all written communications. The documents at issue in *Times Mirror*, the Governor's appointment calendars and schedules, "plainly [did] not meet this definition." (*Ibid.*) CFAC asserts the applications here at issue also fall clearly outside the definition. We disagree.

According to the Governor's appointments secretary, all written communication between the Governor's office and applicants for the supervisor's position was by letter. Prospective applicants expressed interest in the position by letter. Application forms were transmitted to the applicants by letter. The application form is the end product of an exchange of correspondence between the Governor's office and an outside correspondent. Unlike the calendars and scheduling materials requested in *Times Mirror*, the application form is not a document "generated by the Governor's office." (53 Cal.3d at p. 1337.) In *Times Mirror*, the Supreme Court feared that treating internally generated documents as correspondence would create an exemption so broad that all records in the custody of the Governor or employees of the Governor's would be exempt from disclosure. "[T]he exception would swallow the rule." (*Ibid.*) Prior to 1975, the act provided for such a broad exemption, but it was amended in 1975 to limit the exemption to correspondence.[7]

CFAC's suggested reading of section 6254, subdivision (*l*) would emasculate the exemption. In essence, CFAC argues that an application is not a "letter," presumably because it does not begin with a salutation or end with formal closing. Thus, if applicants were given a questionnaire and told to submit a letter containing the answers, the ensuing correspondence would constitute "communication by letters." However, attaching a completed application form to a letter would not. We are not disposed to so formalistic a resolution of the issue. In our view, the correspondence exemption was intended to protect communications to the Governor and members of the Governor's staff from correspondents outside of government. The Governor's calendar and schedule was a public record when created; its transmission to the Governor within the Governor's office did not alter its character or entitle it to any greater protection than it would otherwise be entitled. The application forms herein from private citizens, like formal letters and other mail from citizens, did not become public records until received by the Governor's office. Section 6254 permits the Governor to receive such communications in confidence.

---

[7]The act exempted all records "[i]n the custody of or maintained by the Governor or employees of the Governor's office employed directly in his office . . . ." (Stats. 1970, ch. 1295, § 1.5, p. 2397.)

We therefore conclude that letters and application forms received by the Governor's office from applicants for appointment to the vacant supervisor position constitutes "[c]orrespondence of and to the Governor or employees of the Governor's office" within the meaning of section 6254, subdivision (*l*).

## B. *The Deliberative Process Exemption*

The trial court determined that written materials discussing the applicants' suitability for appointment are exempt from disclosure under section 6255. CFAC concedes such materials are exempt and disavows any interest in examining them. The concession is appropriate. ■ As pointed out in *Times Mirror*, "To prevent injury to the quality of executive decisions, the courts have been particularly vigilant to protect communications to the decisionmaker before the decision is made." (*Times Mirror Co.* v. *Superior Court, supra*, 53 Cal.3d at p. 1341.) Staff evaluations and recommendations discussing an applicant's fitness for appointment are clearly "communications to the decisionmaker" that are protected from disclosure.

■ While CFAC concedes evaluations and recommendations are protected from disclosure, it insists that applications from supervisorial aspirants are not. Although applications are primarily factual, we are persuaded that section 6255 also protects them from disclosure. To understand why this is so requires a review of principles underlying the deliberative process privilege.

There are few California precedents relating to the deliberative process privilege. The privilege is largely a product of cases decided under the federal Freedom of Information Act (FOIA).[8] Its origin was traced in *Times Mirror* to "the traditional common law privilege that attached to confidential intraagency advisory opinions, a privilege which was later codified in exemption 5 [of the FOIA.]" (*Times Mirror Co.* v. *Superior Court, supra*, 53 Cal.3d at pp. 1339-1340, fn. 10.) Exemption 5 covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." (5 U.S.C. § 552(b)(5).) There is no exact counterpart to exemption 5 in our Public Records Act. Section 6254, subdivision (a) exempts from disclosure "Preliminary drafts, notes, or interagency or intra-agency memoranda which are not retained by the public agency in the ordinary course of business,

---

[8]Because the Public Records Act is modeled after the federal FOIA and serves the same purpose, federal decisions under the FOIA are often relied on to construe California's act. (*Times Mirror Co.* v. *Superior Court, supra*, 53 Cal.3d at p. 1338.)

provided that the public interest in withholding those records clearly outweighs the public interest in disclosure." Section 6255 permits an agency to withhold any record by demonstrating "that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record."

In *Times Mirror*, the Supreme Court constructed a deliberative process privilege from federal decisions applying exemption 5, and from the broad language of section 6255 which permits the creation of a privilege in any factual circumstance where the public interest in confidentiality clearly outweighs the interest in disclosure. The "deliberative process privilege" in California simply describes factual circumstances, drawn from litigation under exemption 5, where the balance tilts in favor of confidentiality. While the language of exemption 5 finds no analog in the Public Records Act, the policies underlying exemption 5 are policies which find expression in section 6255.

The deliberative process privilege delineated in federal decisions under exemption 5 and articulated in *Times Mirror* reflects a concern that the quality of decision making suffers when the deliberative process is prematurely exposed to public scrutiny. "There are essentially three policy bases for this privilege. First, it protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions. Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon. And third, it protects the integrity of the decision-making process itself by confirming that 'officials should be judged by what they decided[,] not for matters they considered before making up their minds.' " (*Jordan* v. *United States Dept. of Justice* (D.C. Cir. 1978) 591 F.2d 753, 772-773 [192 App.D.C. 144], fns. omitted.) In *Times Mirror*, the Supreme Court emphasized the first of the policy bases: "The key question in every case is 'whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.' (*Dudman Communications* v. *Dept. of Air Force* [(D.C. Cir. 1987)] 815 F.2d [1565,] 1568 [259 App.D.C. 364].)" (*Times Mirror Co.* v. *Superior Court, supra*, 53 Cal.3d at p. 1342; see also *Rogers* v. *Superior Court, supra*, 19 Cal.App.4th 469.)

CFAC recognizes these general principles. It acknowledges the disclosure of staff evaluations and recommendations regarding the suitability of individuals for appointment would be protected by the deliberative process

privilege. However, self-disclosed information provided by an applicant, according to CFAC, "is precisely the kind of factual information that the courts have consistently held is *not* subject to [the] privilege." (Italics in original.) CFAC likens applications to "unevaluated factual reports or summaries" which have been held not to fall within the federal deliberative process privilege. CFAC notes the Governor can appoint individuals who did not submit applications and there is no assurance the Governor will even review an application. Because the applications disclose nothing of the Governor's thought processes, disclosure of the applications would not impair the Governor's decisionmaking process.

CFAC's view of the consequences flowing from the disclosure of applications for appointment is too narrow. The deliberative process privilege recognizes that the deliberative process can be impaired by exposure to public scrutiny. The disclosure of records containing only factual matters can impair the deliberative process by revealing the thought processes of the government decision maker. However, the deliberative process can be impaired in other ways as well. As noted in *Times Mirror*: "*Brockway* v. *Department of the Air Force* (8th Cir. 1975) 518 F.2d 1184 illuminates another pertinent facet of the issue before us. The father of an Air Force pilot sought disclosure of certain witnesses' statements concerning an airplane crash in which his son was killed. Although the information was factual rather than advisory in nature, the court nevertheless held that confidentiality was necessary to prevent ' "inhibition of the free flow of information" ' to the Air Force. (*Id.* at p. 1193, quoting Note, *The Freedom of Information Act and the Exemption for Intra-Agency Memoranda* (1976) 86 Harv.L.Rev. 1047, 1052-1053.) '[W]ithout the assurances of confidentiality,' the court concluded, the 'flow of information to the Air Force' might be sharply curtailed, and the deliberative processes and efficiency of the agency greatly hindered. (518 F.2d at pp. 1193-1194.)" (*Times Mirror Co.* v. *Superior Court, supra*, 53 Cal.3d at p. 1343.)

While not obliged to fill supervisorial vacancies from persons who seek appointment to the position, the Governor encourages qualified applicants to seek consideration. To assist in evaluating their qualifications, applicants must respond to questions that probe deeply into their personal and political backgrounds. Thus, for example, applicants were required to answer the following: "Is there anything in your background, which if made known to the general public through your appointment, would cause an embarrassment to you or the administration?" While CFAC may believe this is "exactly the kind of information, which . . . should be made available to the public," for

reasons eloquently stated in *Times Mirror*, we disagree. "The answer to th[is] argument[] is not that [it] lack[s] substance, but pragmatism. ■ The deliberative process privilege is grounded in the unromantic reality of politics; it rests on the understanding that if the public and the Governor were entitled to precisely the same information, neither would likely receive it." (*Times Mirror Co.* v. *Superior Court, supra,* 53 Cal.3d at p. 1345.)

In an accusatory political system where blame frequently flows upward and public officials, whether appointed or elected, are judged by standards that vary with the shifting political winds, the Governor is well advised to delve deeply into a candidate's background. That process of review is greatly benefited by an applicant's candor in disclosing potentially embarrassing facts that may be of only marginal relevance to the person's abilities. Candor is less likely to be forthcoming if the applicant knows the facts will be disclosed regardless of the outcome. Perhaps probing inquiries and public disclosures are the price one pays to be a public official but it is not likely a cost that one who is merely an applicant for appointment to a position would be willing to suffer. ■ Like the statements considered in *Brockway* v. *Department of the Air Force* (8th Cir. 1975) 518 F.2d 1184, " '[W]ithout the assurance of confidentiality,' . . . the 'flow of information to [the Governor]' might be sharply curtailed, and the deliberative processes and efficiency of the [Governor] greatly hindered. [Citation.]" (*Times Mirror Co.* v. *Superior Court, supra,* 53 Cal.3d at p. 1343.) The pool of quality applicants from which the Governor might select could be reduced; worthy prospects might elect to forego the opportunity. Moreover, those choosing to apply may be less forthright in their responses. "Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decision-making process." (*United States* v. *Nixon* (1974) 418 U.S. 683, 705 [94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039, 1062].) The selection process is enhanced by a large applicant pool and by detailed information regarding each applicant, in the same manner that decision making in other contexts is enhanced by access to information and opinions from a variety of sources. Disclosure would likely reduce the applicant pool and the candor of those who apply.

While we find the public interest in favor of confidentiality is great, we must still consider whether the public interest in disclosure is greater. ■ Not every disclosure which hampers the deliberative process implicates the deliberative process privilege. Only if the public interest in nondisclosure clearly outweighs the public interest in disclosure does the deliberative process privilege spring into existence. The burden is on the Governor to

establish the conditions for creation of the privilege. The trial court's determination is subject to de novo review by this court, although we defer to any express or implied factual findings of the superior court. (*Connell* v. *Superior Court* (1997) 56 Cal.App.4th 601 [65 Cal.Rptr.2d 738].)

CFAC finds the interest in disclosure is overwhelming because of the unique nature of the appointment here at issue. Without conceding that applications for other executive positions are exempt from disclosure, CFAC argues that applicants for supervisor vacancies stand on a different footing. Because they are seeking a position normally decided by the voters, public scrutiny of their qualifications is a natural and critical concomitant of their quest. Indeed, disclosure enhances the decisionmaking process by providing more information to the Governor on which he can base a decision.

We are unmoved by CFAC's balancing assessment for several reasons. First, there is nothing in the legislative scheme governing appointments to vacant supervisor positions to suggest the Governor must depart from the decisionmaking process he has established for appointment to other offices. As with other appointments, so with supervisor appointments, the Governor is free to consider the sentiments of those affected by the appointment. The fact that the person ultimately selected must later stand for election should make the Governor extremely sensitive to the views of voters in the affected district and ever more mindful of how the appointment will be received by constituent groups. However, the method the Governor uses to gather such information is not restricted by statute; he is not compelled to release a list of prospects for public comment or open his appointment files to public examination. Nor would it appear that such a move would be necessary to assure public input. As CFAC suggests, timidity is not a common characteristic of those seeking the office of county supervisors. It is difficult to imagine that a Governor would lack for public comment from supporters and detractors of supervisor aspirants.

Second, the fact that appointed supervisors are ultimately accountable to the people is not necessarily a compelling reason for disclosure. With respect to county supervisors, the ballot box, not public disclosure of applications, provides the ultimate check on the Governor's appointment authority. While other executive appointees wield greater authority over more people than a supervisor in a small county, such appointees are never compelled to appear before the electorate and are never subject to the "intense public scrutiny" that, according to CFAC, attends a county supervisor. After the Governor's decisionmaking process is complete and the successful applicant is appointed, the press may probe and report on the appointee with all the vigor

we expect from our free press. It is difficult to understand how disclosure of information revealed in confidence by unsuccessful applicants for the office advances the cause of open government when the successful applicant must ultimately face the voters in a contested election.[9]

Our conclusion comports with *Wilson* v. *Superior Court* (1996) 51 Cal.App.4th 1136 [59 Cal.Rptr.2d 537], a case involving the identical issue but raised in a writ proceeding filed by the Governor following an order compelling his disclosure of applications for appointment. In *Wilson*, the Court of Appeal appeared to resolve the issue on evidentiary grounds. The court concluded the trial court's determination that the newspaper's public records request did not impinge on the deliberative process was not supported by substantial evidence. (*Id.* at p. 1141.) This suggests there was a failure of proof which could be remedied in future litigation. However, apart from a few facts concerning the creation and content of the records here at issue, the facts which drive our legal conclusions are not adjudicative but legislative in character. "Legislative facts" refer to the basic generalized knowledge that a fact finder possesses regarding human affairs, and the way the world works. (See 9 Wigmore on Evidence (Chadbourn rev. ed. 1981) § 2565(b), pp. 696-698; Saks, *Judicial Attention to the Way the World Works* (1990) 75 Iowa L.Rev. 1011.) Thus, like the United States Supreme Court, our perception that "those who expect public dissemination of their remarks may well temper candor with a concern for appearance," is based on "human experience" and not testimony of psychiatrists admitted at trial. (*United States* v. *Nixon, supra,* 418 U.S. at p. 705 [94 S.Ct. at p. 3106, L.Ed.2d at p. 1062].)

We also agree with the court in *Wilson* that an in camera hearing is not always necessary to resolve the weighing process required by section 6255. The request sought all applications and was not confined to a particular candidate or information of a particular character. CFAC offered no reasons for disclosure beyond public policies which underlie the Public Records Act generally. While an in camera review may be indicated in an appropriate case, this is not such a case. A review of individual applications was simply unnecessary. (Cf. *Times Mirror Co.* v. *Superior Court, supra,* 53 Cal.3d at p. 1347, fn. 15.)

---

[9]We note that compelling the disclosure of applications would not ensure that the information sought by CFAC would be disclosed in the future. The parties acknowledge that supervisorial vacancies occur infrequently. Were we to order the disclosure of applications, the Governor could eliminate written applications altogether and rely on other means to communicate with prospective applicants for the few vacancies that occur.

## DISPOSITION

The petition for writ of mandate is denied, and the alternative writ is discharged. The real party in interest shall recover costs.

Blease, Acting P. J., and Nicholson, J., concurred.

Petitioner's application for review by the Supreme Court was denied December 22, 1998. Kennard, J., was of the opinion that the application should be granted.