95 Cal.Rptr.2d 560 (2000)
80 Cal.App.4th 603
Elgin HAYNIE, Petitioner,
v.
The SUPERIOR COURT of Los
Angeles County, Respondent; County of Los Angeles, Real Party in Interest.
No. B137707.
Court of Appeal, Second District, Division Four.
May 2, 2000.
As Modified May 4, 2000.
Review Granted July 26, 2000.
*563 Adam Axelrad, Robert Mann and Donald W. Cook, Los Angeles, for Petitioner.
No appearance for Respondent.
Manning & Marder, Kass, Ellrod, Ramirez and Steven J. Renick, Los Angeles, for Real Party in Interest.
CURRY, J.
Petitioner Elgin Haynie seeks a writ directing the trial court to vacate its order denying his petition for disclosure of public records under the Public Records Act, Government Code section 6250 et seq. (hereafter, "the PRA"). We grant the petition for writ of mandate.

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND
On July 1, 1999, one or more Los Angeles County Sheriffs deputies stopped Haynie while he was driving a vehicle.
On July 12, 1999, Robert Mann, Haynie's counsel, mailed a letter to the sheriffs department identifying the county employees involved in this incident as Deputies Mertens and Jensen, and requesting the release of pertinent documents, including tape recordings. The request stated in part: "Tape recordings include but are not limited to tape recordings of any radio calls leading up to the Incident, including but not limited to any tape recordings containing any information forming the basis for the decision to detain and/or arrest Mr. Haynie, and any tape recordings made of any communications between the deputy or deputies involved and Mr. Haynie and/or anyone present at the time and place of the Incident, whether such tape recordings were made on Department-issued equipment or on equipment purchased by the deputy or deputies involved. [¶] We understand that a supervisor, probably Deputy Jensen, interviewed several witnesses and took notes of those interviews. We understand that a deputy, probably Deputy Mertens, tape recorded his conversation with Mr. Haynie. We understand that there was a tape recorded broadcast describing the suspect and/or suspects and/or their vehicle. Our request specifically includes, but is not limited to, those items."
On September 7, 1999, Mann faxed a follow-up letter, accompanied by a copy of his July 12 letter, to Deputy County Counsel Terrye L. Cheathem. On September 17, 1999, Cheathem responded as follows: "Although certain information must be released, Government Code § 6254(f) does not require the release of any documents with respect to a law enforcement investigation. In addition, personnel investigations are considered confidential. (Government Code §§ 6254(f), (k), Evidence Code § 1043 et seq, Penal Code §§ 832.7, 832.8) Pursuant to your request, however, the following is a summary of the event with respect to Elgin Haynie. [¶] On July 1, 1999, at approximately 1650 hours, Deputy Mertens received a call from a neighbor who saw several males carrying guns enter an older model dark blue Ford van and travel down the road. The deputy spotted a vehicle matching that description five minutes later and he decided to conduct an investigation of the van. Elgin Haynie was later identified as the drive [sic] of the van along with three females [sic] passengers. [¶] Prior to the stop of the van, the deputy noticed furtive movements on the part of the driver and the passengers. When contacted by the deputy, Mr. Haynie became argumentative and had to be handcuffed. After a brief conversation with the three passengers and Mr. Haynie, it was determined that they were not related to the previous call and *564 were released, [¶] The deputy left the location, but returned within moments only to discover Mr. Haynie attempting to inflict injury to his wrists by striking the pavement. The deputy subsequently requested paramedics and a field supervisor. [¶] Photographs were taken of Mr. Haynie at the scene and no injuries were noted. Mr. Haynie told the supervisor he had no complaint of pain, and the paramedics did not note any injury, either, [¶] We believe this satisfies the Sheriff Department's responsibility with respect to releasing information pursuant to Government Code § 6254(f)."
On November 16, 1999, Haynie filed a verified petition and motion for an order compelling disclosure of public records pursuant to the PRA, alleging that he was subjected to force when he was stopped on July 1, 1999. The county opposed the motion, citing the exceptions to the release of public documents in Government Code section 6254, subdivisions (b) and (f).[1]
Following a hearing on December 7, 1999, the trial court denied Haynie's motion, reasoning that the PRA is not "a prelitigation discovery statute," and that the records Haynie sought fell within the exception in section 6254, subdivision (f). The trial court also denied Haynie's request for his attorney fees under the PRA.

DISCUSSION

A. PRA

As our Supreme Court stated in Roberts v. City of Palmdale (1993) 5 Cal.4th 363, 370, 20 Cal.Rptr.2d 330, 853 P.2d 496, the PRA "was enacted in 1968 and provides that `every person has a right to inspect any public record, except as hereafter provided.' (§ 6253, subd. (a).) We have explained that the act was adopted `for the explicit purpose of "increasing freedom of information" by giving the public "access to information in possession of public agencies."' [Citation.] As the Legislature declared in enacting the measure, `the Legislature ... finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.' (§ 6250.)"
Under the PRA, "all public records are subject to disclosure unless the Legislature has expressly provided to the contrary." (Williams v. Superior Court (1993) 5 Cal.4th 337, 346, 19 Cal.Rptr.2d 882, 852 P.2d 377.) A public record includes "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics" (§ 6252, subd. (e)), and encompasses "magnetic or paper tapes" (id., subd. (f)). Here, Haynie's petition seeks disclosure of four kinds of items, whose existence the county has never affirmatively asserted or denied: (1) recordings of any radio broadcast that the deputy or deputies heard prior to the stop that are relevant to their decision to stop him, (2) any tape recording of Haynie's conversations with the deputy or deputies during the stop, (3) any statements obtained from the passengers in Haynie's vehicle during the stop, and (4) a tape-recorded statement Haynie later made in connection with a complaint about the deputy or deputies. The items Haynie seeks are therefore public records.
As a threshold issue, the county contends that it has no obligation to determine whether the records Haynie seeks exist absent a showing from Haynie concerning their existence and identity. In our view, this contention has been resolved in California First Amendment Coalition v. Superior Court (1998) 67 Cal.App.4th 159, 78 Cal.Rptr.2d 847. The court there explained: "Unquestionably, public records must be described clearly enough to permit the agency to determine whether writings of the type described in the request are under its control. Section 6257 compels an agency to provide a copy of *565 nonexempt records upon a request `which reasonably describes an identifiable record, or information produced therefrom....' However, the requirement of clarity must be tempered by the reality that a requester, having no access to agency files, may be unable to precisely identify the documents sought. Thus, writings may be described by their content. The agency must then determine whether it has such writings under its control and the applicability of any exemption. An agency is thus obliged to search for records based on criteria set forth in the search request." (67 Cal.App.4th at pp. 165-166, 78 Cal. Rptr.2d 847, fn. omitted.) Because Haynie's requests, as found in Mann's letters, reasonably specify the records he seeks, the county is obligated to determine whether they exist, enumerate or describe the records so discovered, identify exemptions applying to any enumerated or described records, and disclose the remaining records.
On a related matter, the county contends that disclosing the copies of radio broadcasts described in (1) of Haynie's petition, ante, if they exist, would force the county to admit that the deputy or deputies who stopped Haynie relied on any such radio broadcast. In our view, Haynie's request for radio broadcasts in Mann's letters does not carry this presupposition, and the county would be free to disclaim any such admission in releasing copies of radio broadcasts.
We therefore turn to whether Haynie is entitled to the release of the records that he seeks, if they exist. "The trial court's determination is subject to de novo review by this court, although we defer to any express or implied factual findings of the superior court. [Citation.]" (California First Amendment Coalition v. Superior Court, supra, 67 Cal.App.4th at p. 173, 78 Cal.Rptr.2d 847). We review these findings for the existence of substantial evidence.[2](Times Mirror Co. v. Superior Court (1991) 53 Cal.3d 1325, 1336, 283 Cal.Rptr. 893, 813 P.2d 240.) However, under principles of appellate procedure, we do not review the trial court's reasoning, and we will uphold the ruling if it is correct on any theory properly sustained by the record. (Mayflower Ins. Co. v. Pellegrino (1989) 212 Cal.App.3d 1326, 1332, 261 Cal.Rptr. 224.)
The trial court denied disclosure of the items sought because it concluded that the PRA was not intended to facilitate Haynie's admitted purpose in seeking the items, namely, to determine whether he will pursue litigation regarding the July 1, 1999, incident. However, as we explained in Fairley v. Superior Court (1998) 66 Cal.App.4th 1414, 1422, 78 Cal.Rptr.2d 648, the PRA does not contain a general bar to the release of public records to potential litigants.
The dispositive issue, therefore, is whether the items in question are exempt from release under the provisions *566 of the PRA. "`Grounds to deny disclosure of information "must be found, if at all, among the specific exceptions to the general policy that are enumerated in the [PRA]." [Citation.] The general policy of disclosure reflected in the [PRA] "can only be accomplished by narrow construction of the statutory exemptions." [Citation.]' [Citation.]" (Fairley v. Superior Court, supra, 66 Cal.App.4th at pp. 1419-1420, 78 Cal.Rptr.2d 648.) The public agency has the burden of establishing an exemption" before records are provided, and exemptions not then asserted are waived. (Vallejos v. California Highway Patrol (1979) 89 Cal.App.3d 781, 787, 152 Cal.Rptr. 846.)
Here, the items that Haynie seeks fall into two categories, namely, records created before or during the stop on July 1, 1999, and records created after this date. We address each category separately.

B. Records Created Before or During Stop

The trial court found that the radio broadcast and tape recordings generated before or during the stop, if they exist, are exempt from disclosure under section 6254, subdivision (f). Under subdivision (f), a public agency may deny disclosure of "[r]ecords of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes...." Nonetheless, subdivision (f) obligates the public agency to disclose enumerated information found in these records.
As our Supreme Court explained in Williams v. Superior Court, supra, 5 Cal.4th at page 355, 19 Cal.Rptr.2d 882, 852 P.2d 377, section 6254, subdivision (f) "does not provide[ ] that a public agency may shield a record from public disclosure, regardless of its nature, simply by placing it in a file labelled `investigatory.'" Rather, it is well established that "`information in public files [becomes] exempt as "investigatory" material only when the prospect of enforcement proceedings [becomes] concrete and definite.' [Citations.]" (Id. at p. 356, 19 Cal.Rptr.2d 882, 852 P.2d 377.)
In stating these principles, the Williams court cited with favor the reasoning in Uribe v. Howie (1971) 19 Cal.App.3d 194, 96 Cal.Rptr. 493. In Uribe, a farm worker, suspecting that pesticides had injured her, sought disclosure of reports by pest control applicators filed with Riverside County. (Id. at pp. 198-199, 96 Cal.Rptr. 493.) The county denied disclosure under section 6254, subdivision (f), contending that the reports were filed for licensing purposes. (19 Cal.App.3d at pp. 212-213, 96 Cal.Rptr. 493.) The court in Uribe rejected the county's position that subdivision (f) barred disclosure of any record that might be used in disciplinary proceedings, reasoning that it would allow public agencies to withhold virtually every record. (19 Cal.App.3d at p. 213, 96 Cal.Rptr. 493.) The Uribe court thus held that the reports were improperly withheld because the prospect of enforcement proceedings were not "concrete and definite" when the reports were prepared. (Id. at pp. 212-213, 96 Cal.Rptr. 493.)
Here, the information released by the county pursuant to section 6254, subdivision (f) discloses only that Haynie was stopped pursuant to a report that some males had entered a van carrying weapons, and he was subsequently stopped, handcuffed, released, and examined for injury. Viewed in the light most favorable to the trial court's ruling, the scanty record indicates only that the deputy or deputies who stopped Haynie acted on mere suspicion of criminal conduct. The neighbor's call that prompted the stop does not necessarily describe a crime, and the stop itself, as depicted by the county, was routine police inquiry. Under Williams and Uribe, the *567 records created before or during the stop cannot be withheld under subdivision (f) because the prospect of enforcement proceedings were not concrete and definite when the records were prepared.
The county also contended that these records fall under subdivision (b) of section 6254. Under subdivision (b), a public agency may decline to disclose "[r]ecords pertaining to pending litigation to which the public agency is a party, or to claims made pursuant to Division 3.6 (commencing with Section 810), until the pending litigation or claim has been finally adjudicated or otherwise settled." In Fairley, we concluded that records may not be withheld under this exception unless they were "`specifically prepared for use in litigation'" or this was "`the "dominant purpose" behind its preparation.'" (66 Cal.App.4th at p. 1420, 78 Cal.Rptr.2d 648, quoting City of Hemet v. Superior Court (1995) 37 Cal.App.4th 1411, 1419, 1420, 44 Cal.Rptr.2d 532.) Nothing in the record supports withholding the records at issue on the basis of this exception.
In sum, the trial court erred in barring the disclosure of records created before or during the stop, if these records exist. For reasons we have explained (see Section A., ante), we are troubled by the county's resolute inaction concerning the existence of these records. Because we cannot resolve whether they exist, the matter must be remanded with directions that the trial court determine whether the records in question exist, and if so, order their disclosure.

C. Records Created After The Stop

Haynie's petition also seeks a copy of a statement that he gave to the Sheriffs Department after Haynie's counsel made a personnel complaint on Haynie's behalf. The trial court also found that this record is exempt from disclosure under section 6254, subdivision (f).
As the court in Williams clarified, "the exemption for investigatory files does not terminate with the conclusion of the investigation. Once an investigation, as defined in Uribe (supra, 19 Cal.App.3d at pp. 212-213, 96 Cal.Rptr. 493), has come into being because there is a concrete and definite prospect of enforcement proceedings at that time, materials that relate to the investigation and, thus, properly belong in the file, remain exempt subject to the terms of the statute." (Williams v. Superior Court, supra, 5 Cal.4th at pp. 361-362, 19 Cal.Rptr.2d 882, 852 P.2d 377.)
Here, Mann's declaration in support of Haynie's motion for disclosure describes "a tape recording of an interview of Mr. Haynie about the incident by Lt. Corrigan conducted on or about July 29 or 30, 1999." In support of the county's opposition, Cheathem filed a declaration stating that Haynie filed a claim with the Los Angeles County Board of Supervisors on July 13, 1999. Cheathem's declaration also stated: "I have also discovered ... that the majority of the documents which [Haynie] requested do not exist. There is no crime report, arrest report, evidence reports, use of force reports, canine reports, officer involved shooting reports, or follow-up reports relative to the incident involving Mr. Haynie. There exists [sic], however, documents which were generated as a result of the Citizen's Complaint which Mr. Mann filed with the Sheriffs Department. The latter documents are privileged and can only be disclosed after the hearing on a Pitchess[[3]] motion."
In our view, this evidence reasonably supports the inference that the record in question was created during an investigation into Haynie's complaint to the Sheriffs Department about the stop, and when the prospect of enforcement proceedings arising from this complaint were concrete and definite. It therefore falls under the exemption in section 6254, subdivision (f). (See Williams v. Superior Court, supra, 5 *568 Cal.4th at pp. 348-362, 19 Cal.Rptr.2d 882, 852 P.2d 377.)
Haynie contends that he is nonetheless entitled to a copy of his statement under Penal Code section 832.7, which forms part of the statutory scheme regulating Pitchess motions seeking confidential police personnel records in connection with complaints against police officers. (City of Hemet v. Superior Court, supra, 37 Cal.App.4th at p. 1423, 44 Cal.Rptr.2d 532.) Subdivision (b) of Penal Code section 832.7 provides that "a department or agency shall release to the complaining party a copy of his or her own statements at the time the complaint is filed." However, this contention was not presented to the trial court, and nothing in the record indicates whether Haynie's recorded statement was prepared in connection with the filing of his complaint. We therefore do not address this contention.
In sum, substantial evidence supports the trial court's determination that Haynie's post-stop statement is exempt from disclosure under section 6254, subdivision (f).

D. Attorney Fees

Haynie also contends that he is entitled to his attorney fees. We agree.
Subdivision (d) of section 6259 provides for an award of costs and attorney fees "should the plaintiff prevail in litigation" under the PRA. In Belth v. Garamendi (1991) 232 Cal.App.3d 896, 901, 283 Cal.Rptr. 829, the court indicated that the phrase "prevail in litigation" should be construed under the guidance of the case law on the similar language found in Code of Civil Procedure section 1021.5.[4] This case law "takes a pragmatic approach in defining `prevailing' or `successful' party...." (Sagaser v. McCarthy (1986) 176 Cal.App.3d 288, 314, 221 Cal.Rptr. 746.) Thus, "[a] plaintiff is considered the prevailing party if his lawsuit motivated defendants to provide the primary relief sought or activated them to modify their behavior [citation]...." (Belth v. Garamendi supra, 232 Cal.App.3d at pp. 901-902, 283 Cal.Rptr. 829.)
As we have explained (see sections A. and B., ante), Haynie is entitled to disclosure of (1) the existence or nonexistence of the records he seeks that were created before or during the stop, and (2) the records themselves, if they exist. Accordingly, even if the records at issue do not exist, Haynie has achieved the relief he sought regarding them, and thus he is entitled to his fees and costs under the PRA.

E. Sanctions

Sanctions for a frivolous appeal or writ petition are granted when the proceedings are prosecuted for an improper motive or are indisputably meritless. (In re Marriage of Flaherty (1982) 31 Cal.3d 637, 650, 183 Cal.Rptr. 508, 646 P.2d 179; Code Civ. Proc., § 907; Gottlieb v. Superior Court (1991) 232 Cal.App.3d 804, 815, 283 Cal.Rptr. 771.) These standards are also applicable when a party to *569 the proceedings seeks some form of relief by motion or request. (D'Avola v. Anderson (1996) 47 Cal.App.4th 358, 363, fn. 5, 54 Cal.Rptr.2d 689.)
Here, the county's return requests attorney fees. Under section 6259, subdivision (d), the county is entitled to attorney fees only if Haynie's request for public records "is clearly frivolous." At oral argument, counsel for the county admitted that he decided to request attorney fees even though he knew that he had no reasonable basis to do so,[5] and he waived his right to an order to show cause on the issue of sanctions or to address the propriety of sanctions in writing. By including a concededly meritless request for attorney fees in its opposition to the writ petition, County has needlessly encumbered this proceeding and has obstructed petitioner's efforts to obtain access to public records. Counsel's admission that such a request for attorney fees is uniformly and regularly made regardless of the lack of merit to such a request reasonably creates the inference that this practice is designed to intimidate parties from legitimately exercising their statutory rights to petition this court for relief. We therefore conclude that the county's counsel should be sanctioned $1,000.[6]

DISPOSITION
The alternative writ is discharged. Let a peremptory writ of mandate issue directing that respondent trial court to (1) vacate its order of December 7, 1999, (2) reconsider the petition and motion in conformity with the views expressed here, and (3) enter an order awarding Haynie costs and reasonable attorney fees. Petitioner is awarded costs. Counsel for real party in interest, Manning & Marder, Kass, Ellrod, Ramirez and Steven J. Renick, shall pay to the clerk of this court monetary sanctions in the amount of $1,000, within 10 days after this order becomes final as to this court.
CHARLES S. VOGEL, P.J., and EPSTEIN, J., concur.
NOTES
[1] All further statutory citations are to the Government Code, unless otherwise indicated.
[2] Established principles concerning the substantial evidence rule guide our review. We "consider the evidence in the light most favorable to the prevailing party, giving that party the benefit of every reasonable inference and resolving conflicts in support of the judgment. [Citation.]" (Nordquist v. McGraw-Hill Broadcasting Co.(1995) 32 Cal.App.4th 555, 561, 38 Cal.Rptr.2d 221.) However, "substantial evidence" is not "`synonymous with "any" evidence. It must be reasonable ..., credible, and of solid value....' [Citation.]" (Kuhn v. Department of General Services (1994) 22 Cal.App.4th 1627, 1633, 29 Cal.Rptr.2d 191.) Furthermore, "the determination whether there was substantial evidence to support a finding or judgment must be based on the whole record." (Rivard v. Board of Pension Commissioners (1985) 164 Cal.App.3d 405, 412, 210 Cal.Rptr. 509.) Nonetheless, "the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trier of fact], and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the [trier of fact]." (Bowers v. Bernards (1984) 150 Cal.App.3d 870, 873-874, 197 Cal.Rptr. 925, italics omitted.)
[3] Pitchess v. Superior Court (1974) 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305.
[4] As the court explained in Belth, "Code of Civil Procedure section 1021.5, provides that under three specified circumstances, a court may award attorney fees to a successful party in an action resulting in the enforcement of an important right affecting the public interest. It is a codification of the common law private attorney general doctrine which `rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.' (Woodland Hills Residents Assn., Inc. v. City Council (1979) 23 Cal.3d 917, 933 [154 Cal. Rptr. 503, 593 P.2d 200]....) Similarly, `Section 6259 was enacted to carry out the purposes of the [PRA]. Through the device of awarding attorney fees, citizens can enforce its salutary objectives.' (Broun v. City of Taft [(1984)] 154 Cal.App.3d [332,] 349 [201 Cal. Rptr. 654].)" (Belth v. Garamendi, supra, 232 Cal.App.3d at p. 901, fn. 2, 283 Cal.Rptr. 829.)
[5] When asked for the basis for the request, counsel replied, "There is none, your honor." Counsel admitted that he knew this when he placed the request in the return, and stated, "I take full responsibility that I made a conscious decision to put that [request] in." In response to the question, "And ... you knew you shouldn't do it?," counsel answered, "Yes."
[6] We have directed the clerk of the court to notify the State Bar of these sanctions. (Bus. & Prof.Code, § 6086.7, subd. (c).)