Filed 11/17/21; Certified for Publication 12/13/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| DEAN GETZ,<br><br>        Petitioner,<br><br>   v.<br><br>THE SUPERIOR COURT OF EL DORADO COUNTY,<br><br>        Respondent;<br><br>COUNTY OF EL DORADO et al.,<br><br>        Real Parties in Interest. | C091337<br><br>(Super. Ct. No. PC20190335) |

California has declared, in terms as clear as the English language permits, that government business is the people's business whether conducted in proceedings by deliberative bodies (Gov. Code, § 54950 et seq.)[1] or discussed in records of any form,

---

[1] All undesignated statutory references are to the Government Code.

1

and must be accessible to the public, though access can be regulated to reduce the administrative burden imposed on government agencies and in rare instances can be denied altogether to prevent the disclosure of records exempt from disclosure. Computers have led to an enormous increase in the volume of information collected and retained by government and made identification and access to such information easier. But the rules providing for public access have not changed.

In this case we consider the application of rules calculated to reduce the administrative burden posed by public records requests—rules requiring clarity and specificity—to a request for electronic records made by petitioner Dean Getz to real party in interest the County of El Dorado (the County),[2] under the California Public Records Act (Gov. Code, § 6250 et seq.) (the Act).

Concerned about the management of a homeowners association, of which he is a member, by a local development company, Getz sought records regarding the County's contacts with the homeowners association and the development company. Getz initially requested "all development plans, proposals, reports and applicable correspondence including electronic (e.g. email) 'records' by and between El Dorado County (EDC) and any other party pertaining to" a planned development. In the days before computer technology, identification and transmittal of paper documents meeting the description in the request might have imposed an enormous burden, but technology has greatly simplified identification and transmittal of electronic documents. Employing computer technology, the County was able to quickly locate e-mails potentially responsive to the request.

---

[2]  Real parties in interest include the County; El Dorado County Community Development Services, Planning and Building Department, Planning Division; and El Dorado County District Attorney's Office.

Believing he had not obtained all the information available, Getz thereafter expanded the scope of the request to include all e-mails from January 2013 to August 1, 2018, between four e-mail domain names associated with the development company and its representatives and any department of the County.

The County complains about the volume of e-mails responsive to the request, and speculates many of the documents are not likely to relate to the conduct of official business, and thus would not be "public" records, and indeed might fall within various exemptions from disclosure. According to the County, the need to review all of the e-mails to determine if they contain privileged information and to verify they are public documents will impose an enormous burden.

The trial court agreed with the County that the request was overbroad and unduly burdensome. We will conclude it can reasonably be assumed that records in the custody of a public agency are public records; a claim to the contrary must be made by the agency and be supported by substantial evidence. Further, the burden to assert and establish exemption from disclosure is on the agency, which would be well advised to segregate privileged documents from others. An agency cannot resist disclosure based on the burden stemming from actions needed to assuage an abstract fear of improvident disclosure, a fear that could be avoided by simply setting privileged documents apart.

Getz also seeks review of an order of respondent court denying his request for records regarding the County District Attorney's review of a false police report misdemeanor charge involving Getz. We agree with the trial court that the misdemeanor charge records were investigative files exempt from production under section 6254, subdivision (f) of the Act.

## FACTUAL AND PROCEDURAL BACKGROUND

### *County's Demurrer and Request for Judicial Notice*

Preliminarily, we address a procedural issue. In response to Getz's petition, this court issued an order to show cause. In response to the order to show cause, the County

3

filed a demurrer. "If the court issues an alternative writ or order to show cause, the respondent or any real party in interest, separately or jointly, may serve and file a return by demurrer, verified answer, or both."[3] (Cal. Rules of Court, rule 8.487(b)(1); see also Code Civ. Proc., § 1089; *Agricultural Labor Relations Bd. v. Superior Court* (2016) 4 Cal.App.5th 675, 681 (*Agricultural Labor Relations Bd.*).) "[A] demurrer admits the facts pleaded in a writ petition. [Citation.]" (*Agricultural Labor Relations Bd., supra*, at p. 682.) Therefore, we take the facts from the well-pleaded, verified allegations in the petition. (*Ibid.*)

In addition, the County requested judicial notice of certain factual findings the trial court made in denying the petition and three declarations of County officials submitted to the trial court.[4] Getz opposed the request as "cumulative" because this court "already has notice of the record, which includes the same records in Respondent's request for judicial notice," i.e., the superior court's order and the three declarations. We agree. Getz submitted as exhibits to the petition documents filed with the superior court, as well as the transcript of the hearing the court conducted. We also draw some facts that follow from these records. (*Agricultural Labor Relations Bd., supra*, 4 Cal.App.5th at p. 682, fn. 3.) Accordingly, the County's request for judicial notice is denied.

---

[3] The County's response also included a proposed answer setting forth the County's response to the allegations in Getz's petition and affirmative defenses.

[4] The findings made by the trial court may be judicially noticeable but not the truth of those findings. (See *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2018) 23 Cal.App.5th 1129, 1149, fn. 24 ["[W]hile we judicially notice what the [administrative law judge's] decision was (i.e., what findings were made), we do not take judicial notice of the *truth* of those findings"]; see also *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 886-887; *Steed v. Department of Consumer Affairs* (2012) 204 Cal.App.4th 112, 122.)

4

*Request for E-mails Between Certain E-mail Domains and County Personnel*

Getz is a member of the Serrano El Dorado Owners Association (Serrano), developed and managed by Parker Development Company (Parker). Getz alleges that he is concerned about the management of Serrano, Parker's role in managing Serrano, and the County's contacts with Serrano and Parker.

On March 29, 2018, Getz submitted a request under the Act to the County to produce, "including drafts—all development plans, proposals, reports and applicable correspondence including electronic (e.g. email) 'records' by and between El Dorado County (EDC) and any other party pertaining to the application listed on EDC's website as 'SP 12 002 CENTRAL EL DORADO HILLS SPECIFIC PLAN' since its last entry titled, '8/25/20[1]6 Informational Workshop' to date."[5]

In response, the County produced an index of responsive documents, including e-mails, on a CD with hyperlinks to the text of the e-mails or documents.[6] County Planning Manager Rommel Pabalinas created the index using searching software and search terms. Pabalinas opened and reviewed each e-mail and document to determine

---

[5] The County numbered this request P001635-032918. Getz alternatively describes this request as follows: "Before August 1, 2018, I submitted a California Public Records Act (CPRA) request, EDC Request No. P001635-032918 seeking emails between the Respondents' Planning Division and the email domains '@serranohoa.org', '@parkerdevco.com', @hsmlaw.com' and/or 'mcnallytemple.com' from January 1, 2013 to the date of the request." The County contends that Getz "incorrectly describes Request P001635-032918 . . . ." The record appears to support the County. At the hearing on the petition, Getz's legal counsel stated: "The first request [by] Mr. Getz sought documents related to something called the El Dorado Hills specific plan and he did not only seek e-mails."

[6] A hyperlink is "an electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or a different document . . . ." (Merriam-Webster's Collegiate Dictionary (11th ed. 2003) p. 611; *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 19 ["hyperlinks" are "links that take the reader to an additional page of information"].)

5

responsiveness to the request. Pabalinas also had to determine that the records contained information relating to County business and ensure that no draft documents concerning the development project were included since the public hearing process had yet to start. Pabalinas worked with county counsel to review the responsive records for exemptions to disclosure or information protected from disclosure by privilege or work product. Pabalinas estimated that this process required 80 hours of his time.

After reviewing the e-mails produced, Getz believed that not all responsive records were produced. On August 1, 2018, Getz submitted another request: "I am seeking electronic copies of any/all emails by or between ANYONE (i.e. any department) within the County of El Dorado and anyone at the email domains of 'serranohoa.org', '@parkerdevco.com', @hsmlaw.com' and/or '@mcnallytemple.com' from January 1, 2013 to date in the County's possession. This is [a] follow up (or expanded) request in connection with previously filed request, P001635-032918, for which I have reason to suspect that all the responsive information hasn't been produced. With that in mind, this request should be easily fulfilled with a simple query of the County's electronic records without concern to subject matter and should include queries of any personal devices used by County representatives. To that end, this request also seeks any corresponding metadata sent or received pertaining to any of the responsive records."[7]

The County acknowledged the request and assigned it number P001818-080118. On August 28, 2018, the County notified Getz that approximately 47,000 e-mails were potentially responsive to the request, of which 42,582 e-mails were newly identified. The

---

[7]  According to Getz, (1) " 'serranohoa.org' " was associated with "Serrano El Dorado Owner's Association," (2) " 'parkerdevco.com' " with "Parker Development Company—development company which built the Serrano El Dorado Owners' Association," (3) " 'hsmlaw.com' " with "Hefner Law—land use counsel retained by Parker Development Company, not the County," and (4) " 'mcnallytemple.com' " with "McNally Temple Associates, Inc.—Communications and public relations consultants retained by Parker Development Company."

County asked Getz to "further refine your request in order to allow for a more focused search and to reduce the County's burden in reviewing the responsive records prior to production." Getz responded that he did not believe he was required to narrow the focus of the request, but that the County was required to produce all requested documents.

Using the same reviewing process as for Getz's prior request, Pabalinas estimated 40 to 50 business days would be required to review and sort responsive records. He noted that "there are no search terms other than the email domains listed" and concluded therefore that "the emails returned from the search are less likely to relate to the conduct of official business."

Pabalinas also noted that one of the e-mail domains is for a law office that county counsel works with on the defense of one or more lawsuits, including exchanging drafts. Deputy County Counsel Breann Moebius stated that the County is the respondent and Parker the real party in interest in a petition for writ of mandate challenging the County's approval of a Parker development. Moebius stated the County and Parker "were aligned in this lawsuit, and we intended to work together on a common defense thereto." Moebius further stated that in resolving the suit, the County and Parker "maintained a joint defense relationship and shared a common interest with Hefner Law in the course and scope of their representation of their client Parker Development Company."

Deputy County Counsel Roger Runkle echoed Pabalinas that counsel would need to review all e-mails and attachments for privilege, as well as to ensure that draft documents or private information not involving County business is not produced. Runkle noted that the County has over 1,800 employees. Runkle estimated that it would require hundreds of hours to review documents and redact privileged or exempt information.

Getz suggested the County provide an index of the 42,582 e-mails. Getz believed the County would provide an index with hyperlinks as it did in response to request P001635-032918. On February 15, 2019, the County informed Getz: "We are currently

7

preparing that index and will provide it to you next week.  After you have reviewed the index, please let us know which e-mails you would like produced."**8**

On March 25, 2019, the County produced the index of 42,582 e-mails and asked Getz to narrow his focus to describe identifiable public records relevant to his inquiry. The index identified the sender, recipient, subject, date and whether the e-mail had an attachment.  Unlike the prior index, the e-mails were not readable; the index contained no hyperlinked text.

On April 15, 2019, Getz informed the County that, having reviewed the index, it reinforced his need for the text of all responsive e-mails.  Getz stated that he could not find a way to reduce the request (e.g., by domain name or date), because the information he sought seemed prevalent throughout the index.  Getz reiterated his request that the 42,582 e-mails be produced without further delay.  Getz stated "the County has previously provided an [*sic*] similar index . . . whereby the index hyperlinks to the text of each of the responsive emails—so, there should be little additional work to complete this request at this point."  The County did not respond.

*Request for District Attorney's Review of False Police Report Investigation*

On April 2, 2019, Getz submitted a request to the County for "all records (paper and electronic) in connection with the District Attorney's effort(s) to review this matter [alleged misdemeanor by Getz of filing a false police report in 2016] over the course of the past year (April 2, 2018 to April 2, 2019) . . . ."  Getz states in his petition to this

---

**8** Pabalinas stated that the index was provided "pursuant to Government Code § 6253.1 . . . ."  This statute requires a public agency to take certain reasonable steps to assist members of the public to "make a focused and effective request that reasonably describes an identifiable record or records . . . ."  (§ 6253.1, subd. (a).)  However, this requirement does not apply, inter alia, if "[t]he public agency makes available an index of its records."  (*Id.*, subd. (d)(3).)

court that "[t]he request sought, for example, non-confidential witness statements from 2018."

In a March 19, 2019 letter to Getz, Chief Assistant District Attorney William Clark described an investigation arising out of complaints made to the sheriff and district attorney about "mean-spirited and vulgar" Twitter messages posted by an unknown person in 2016 concerning various people involved in a contentious election for the board of Serrano. The County sheriff investigated and concluded there was insufficient evidence of a crime and the investigation was closed.

As described in Clark's letter, Getz, Jeff Baker and Erin Walsh contacted the district attorney expressing frustration with the investigation and asked the district attorney to look into the matter. According to Getz, the review involved "an alleged misdemeanor about me of filing a false police report in 2016," for which he was never charged. The district attorney's office reviewed the sheriff's reports, interviewed Getz and Baker, as well as Nadine Lauren, Walsh, John Yoffie and Jim Pridemore, and looked at a video provided by Getz.[9] The district attorney concluded there was not sufficient evidence to support charges regarding the Twitter harassment nor charges of filing a false police report. Also, Clark noted that filing a false police report is a misdemeanor and the statute of limitations on that offense passed in 2017.

---

[9] The County contends that Getz has not challenged the trial court's ruling sustaining the County's hearsay and legal conclusion objections to the portion of the letter identifying the witnesses, thereby depriving Getz of evidence to support a contention "either that the named individuals actually were interviewed or that they were not confidential witnesses." Review of the record shows that the County only objected to Getz's declaration characterizing Clark's statements. The County did not object to the letter itself attached to the declaration, which was potentially admissible under Evidence Code section 1280, the public employee record exception to the hearsay rule. (See *Gananian v. Zolin* (1995) 33 Cal.App.4th 634, 639-640.)

The County acknowledged receipt of the request and numbered it P002113-040219. On April 12, 2019, Runkle responded: "To the extent there are records responsive to this request with the District Attorney's Office, they are not provided because they are records in investigatory files and those records are completely exempt from disclosure under California Government Code 6245(f) which applies to law enforcement investigatory files and records, including DA files, and continues to apply even if the investigation is closed." On April 13 and 22, 2019, Getz replied that the County District Attorney confirmed on March 26, 2019, that the statute of limitations had run on the charge, therefore the exemption did not apply because there was no prospect of law enforcement. The County did not respond further.

*The Petitions for Writ of Mandate*

On June 25, 2019, Getz filed a petition for writ of mandate directing the County to produce the records sought by request P001818-080118 (e-mails between the County and four e-mail domains) and P002113-040219 (the false police report investigation). Getz and the County submitted briefs. On December 5, 2019, the trial court issued a tentative ruling and the following day conducted a hearing. On December 10, 2019, the court issued a decision denying the petition.

Regarding the request for e-mails, the court agreed with the County that Getz's "request is not 'specific and focused' and is overbroad." The court reasoned: "[Petitioner] not only seeks emails from separate email domains—not any specific email address—his request was also directed to both the Planning Division and to the County as a whole, which includes some 1,800 officers, employees, and representatives. Petitioner apparently did not provide the County with even a general description of any particular content in which he was interested. Moreover, the request seeks records over a period of approximately six years. It is no surprise, then, that the County's search turned up some 47,000 emails that are potentially responsive to the request."

10

The trial court observed "this is a case where the County's efforts to date, have extended well beyond what is reasonable to expect in complying with a [California Public Records Act] request." The court found "that petitioner's request, as currently framed, is overbroad and unduly burdensome."

Regarding Getz's request for documents related to review of the misdemeanor investigation, the court found that the County and district attorney had met their burden of demonstrating that the records in question were exempt under section 6254, subdivision (f). The court noted that Getz "does not seriously dispute that the records request pertains to a law enforcement agency's investigative records," but "contends the records are disclosable because the statute of limitations has lapsed for criminally charging anyone at this point." The court found that the exemption was not limited to pending investigations.

The court did not award attorney fees and costs to the County as the prevailing party, finding that Getz's case was not clearly frivolous.[10]

Getz filed a petition for writ of mandamus in this court seeking a direction to the superior court to vacate its decision and require the County to produce (1) "the responsive records identified in the index," and (2) "the records relating to the five nonconfidential witness statements previously disclosed by the District Attorney."

## DISCUSSION

### Standard of Review

A trial court order supporting the decision of a public agency refusing to disclose records, "shall be immediately reviewable by petition to the appellate court for issuance

---

[10] Section 6259, subdivision (d), requires the court to award costs and reasonable attorney fees to a requester who prevails in litigation under the Act but only to a prevailing public agency if the requester's case is "clearly frivolous."

11

of an extraordinary writ." (§ 6259, subd. (c); *Becerra v. Superior Court* (2020) 44 Cal.App.5th 897, 913 (*Becerra*.))

"The standard of review is mixed. We accept the trial court's factual determinations if supported by substantial evidence, ' "but we undertake the weighing process anew." ' [Citation.]" (*Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733, 790 (*Golden Door Properties*); *Becerra, supra*, 44 Cal.App.5th at p. 913 ["This court 'conduct[s] an independent review of the trial court's ruling; factual findings made by the trial court will be upheld if based on substantial evidence' "].)

" '[E]xemptions are construed narrowly, and the burden is on the public agency to show that the records should not be disclosed.' " (*California First Amendment Coalition v. Superior Court* (1998) 67 Cal.App.4th 159, 167 (*California First*), quoting *Rogers v. Superior Court* (1993) 19 Cal.App.4th 469, 476 (*Rogers*).)

*Requested E-mails*

Getz maintains the trial court erred in a number of ways in denying his petition for an order directing the County to produce the e-mails requested. We conclude that one such claim of error is sufficient, i.e., that the County had already identified the records responsive to the request in the index of 42,582 e-mails but simply refused to produce them. Put another way, the trial court's finding that the request was "overbroad and unduly burdensome" is not supported by substantial evidence, because the County had already located and indexed the responsive documents using the criteria in Getz's request *before* he filed a petition for writ of mandate.

To be sure, Getz was required to present a "specific and focused request" to the County. (*Rogers, supra*, 19 Cal.App.4th at p. 481; *California First, supra*, 67 Cal.App.4th at p. 165.) In *California First*, we said: "Unquestionably, public records must be described clearly enough to permit the agency to determine whether writings of the type described in the request are under its control. Section 6257 compels an agency to provide a copy of nonexempt records upon a request 'which reasonably describes an

12

identifiable record, or information produced therefrom . . . .' However, the requirement of clarity must be tempered by the reality that a requester, having no access to agency files, may be unable to precisely identify the documents sought. Thus, writings may be described by their content. The agency must then determine whether it has such writings under its control and the applicability of any exemption. An agency is thus obliged to search for records based on criteria set forth in the search request." (*California First, supra*, at pp. 165-166.)

The criteria set forth in Getz's request were quite specific, albeit expressly not based on content, and did not require interpretation to determine responsiveness. Any e-mail between County personnel and any e-mail address utilizing the domains specified by Getz was responsive. The process of determining responsiveness did not require reviewing the contents of the e-mail or any attachment. In that sense, recovering e-mails that fit the criteria of the request was not unduly burdensome (and perhaps even less burdensome than Getz's first request).

As we said in *California First*, "[t]he claim of overbreadth raises a separate issue. A clearly framed request which requires an agency to search an enormous volume of data for a 'needle in the haystack' or, conversely, a request which compels production of a huge volume of material may be objectionable as unduly burdensome. [Citation.] Records requests, however, inevitably impose some burden on government agencies. An agency is obliged to comply so long as the record can be located with reasonable effort. [Citation.]" (*California First, supra*, 67 Cal.App.4th at p. 166.)

In *Bertoli v. City of Sebastopol* (2015) 233 Cal.App.4th 353, 372 (*Bertoli*), the court said that disclosure of public records "may be blocked as overly burdensome" under section 6255, subdivision (a).[11] This "catch-all exception" provides that a public

---

[11] "Section 6255 provides in full: 'The *agency* shall justify withholding any record by *demonstrating* that the record in question is exempt under express provisions of this

13

agency may justify nondisclosure where " 'on the facts of the particular case the public interest served by not disclosing the record *clearly outweighs* the public interest served by disclosure of the record.' " (*CBS, supra*, 42 Cal.3d at p. 652.) "When weighing the benefits and costs of disclosure, any expense or inconvenience to the public agency may properly be considered." (*Bertoli, supra*, 233 Cal.App.4th at p. 372, citing *American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 452-453.)[12]

The County's response to Getz's request essentially established that the request was not "overbroad and unduly burdensome." The County produced without objection an index of 42,582 e-mails that fit the criteria of the request, thereby demonstrating that the records could be located with reasonable effort and the volume of material was not unmanageable.

However, the County and the trial court focused on the task of reviewing the collected and indexed e-mails to determine which were responsive to the request. The trial court referred to the e-mails as "47,000 emails that are *potentially responsive* to the request." (Italics added.) Pabalinas declared that "[t]he majority of the documents which I reviewed which had been recovered were not responsive to Mr. Getz's request." Pabalinas's estimate of "40-50 business days" to produce the records was based on the "cumbersome and lengthy" process to "sort and review those records."

Pabalinas acknowledged, however, that "[t]his request does not contain any search terms at all, nor does it make any attempt to identify the records which Mr. Getz seeks." It was in the second half of that sentence where Pabalinas went astray. Getz's request

---

chapter or that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record.' [Italics added.]" (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 652, fn. 8. (*CBS*).)

[12] As Getz points out, the trial court cited section 6255 but did not engage in "the balancing of interests required by section 6255." (*California First Amendment Coalition, supra*, 67 Cal.App.4th at p. 166, fn. 3.)

identified the records sought in terms of e-mail traffic between the four specified e-mail domains and the e-mails of County personnel. Any e-mail fitting these criteria was responsive. No further inquiry was required to determine responsiveness. Getz stated expressly in the request that he sought e-mails "without concern to subject matter. . . ."

Pabalinas did not disagree, referring to Getz as "simply request[ing] all of the emails over a six-year period between any of the County's representatives and four separate email domains, each of which I am informed and believe have a number of email addresses associated with it." But rather than respond to the request as framed, Pabalinas formulated additional criteria for responsiveness, which he did not actually articulate but maintained would require further review.[13] However, the County's obligation was clear, i.e., "to search for records based on criteria set forth in the search request." (*California First Amendment, supra*, 67 Cal.App.4th at p. 166.)

Pabalinas alluded to another basis for review of the content of the e-mails collected, i.e., the records Getz requested were not "public records" subject to disclosure under the Act. (§ 6253, subd. (a); *Anderson-Barker v. Superior Court* (2019) 31 Cal.App.5th 528, 538 [to establish a duty to disclose under § 6253, subd. (c), of the Act, the petitioner must show the record (1) is a public record as defined in § 6252, subd. (e), and (2) is in the possession of the public agency].) Pabalinas declared that "[b]ecause there are no search terms other than email domains listed, the emails returned from the search are less likely to relate to the conduct of official business."[14] This was an

---

[13] To the extent that Pabalinas limited the universe of "responsive" e-mails and documents to those related to the specific plan that was the subject of Getz's first request, any review would be duplicative, as well as contrary to the stated purpose of Getz's second request, i.e., to expand on the first request which he believed did not produce all the documents he sought.

[14] Runkle also declared that county counsel generally "may be responsible" for reviewing the records sought under the Act to determine whether they are "public

15

apparent reference to the definition of " 'Public records' " in section 6252, subdivision (e), as including "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." As the trial court correctly observed, the Act "defines its terms very broadly." (See *Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385, 1418 [" 'The definition is broad and " ' "intended to cover every conceivable kind of record that is involved in the governmental process." ' " ' [Citation]"].)

There was no evidence before the trial court that the County's e-mail exchanges with e-mail addresses in domains owned by a real estate developer, its legal counsel, and public relations consultants would contain anything but information regarding the County's business with these entities. The County relies on *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608 (*San Jose*), where the California Supreme Court observed that "[w]hether a writing is sufficiently related to public business will not always be clear," offering as an example that "depending on the context, an e-mail to a spouse complaining 'my coworker is an idiot' would not likely be a public record," while "an e-mail to a superior reporting the coworker's mismanagement of an agency project might well be." (*Id.* at p. 618.) It is highly unlikely that the County's e-mails Getz sought would fit the first example of an e-mail exchange between individuals in a personal relationship. The four e-mail domains specified in Getz's request are manifestly work-related accounts. The County's email correspondence with e-mail addresses in these domains would naturally deal with work-related matters, e.g., the developer's business with the County in which the developer builds and manages developments. In any event, Pabalinas offered nothing but speculation that the e-mails Getz requested, and the County

___

records." In this particular case, he stated he would need to review the e-mails and attachments collected to ensure that "private information which has nothing to do the County's business" is not "inadvertently produced."

collected and indexed, contained information about anything other than the County's business.  (See 81 Ops.Cal.Atty.Gen. 383 (1998) [speculation is not a basis for denying disclosure under the Act]; *CBS, supra*, 42 Cal.3d at p. 652.)

To be sure, Getz requested a search of personal devices used by County personnel, but there was no evidence that the County did so.[15]  As outlined by Runkle, the County's general procedure involves sending a public records request to the County departments most likely to have the information to locate and segregate the records.  Neither Pabalinas nor Runkle stated that the departments in this case were directed to search employees' personal devices or undertook such a search.  The County did not provide any evidence that the 42,852 e-mails involved personal accounts or contained personal information.  Absent some evidence that any of the e-mails requested were "primarily personal, containing no more than incidental mentions of agency business" (*San Jose, supra*, 2 Cal.5th at pp. 618-619), we do not find an assertion that all 42,852 must be reviewed to make that determination supported by substantial evidence.

The County also makes a passing reference to various statutory exemptions from disclosure in the Act, including "certain types of preliminary drafts, notes or memoranda (Gov. Code § 6254(a)), personal financial data (Gov. Code § 6254(n)), personnel and medical files (Gov. Code § 6254(c)), and material protected by evidentiary privileges (Gov. Code § 6254(k)) . . . ."[16]  However, more than vague suggestions and statutory

---

[15]  The high court in *San Jose* observed that resolution of whether a record requested is a public record "*particularly when writings are kept in personal accounts*, will often involve an examination of several factors, including the content itself; the context in, or purpose for which, it was written; the audience to whom it was directed; and whether the writing was prepared by an employee acting or purporting to act within the scope of his or her employment."  (*San Jose, supra*, 2 Cal.5th at p. 618, italics added.)

[16]  The trial court also observed "[c]ertain records and information must be withheld from public inspection; e.g., to protect personal privacy or to obtain confidential legal advice."  However, the court did not make a finding that Getz's request called for e-mails that should be withheld from disclosure on that basis.

17

references are needed to invoke a privilege. We conclude the County has failed to provide sufficient evidence to require review of the 42,852 e-mails to determine that any of these exemptions might apply.

Regarding section 6254, subdivision (a), Runkle referred in his declaration to reviewing the e-mails and attachments to ensure that "draft documents" are not produced.[17] Section 6254, subdivision (a), exempts from disclosure "[p]reliminary drafts, notes, or interagency or intra-agency memoranda that are not retained by the public agency in the ordinary course of business, if the public interest in withholding those records clearly outweighs the public interest in disclosure." To apply this exemption, the burden is on the public agency to establish three statutory conditions: "(1) The record sought must be a preliminary draft, note, or memorandum; (2) which is not retained by the public agency in the ordinary course of business; and (3) the public interest in withholding must clearly outweigh the public interest in disclosure." (*Citizens for a Better Environment v. Department of Food & Agriculture* (1985) 171 Cal.App.3d 704, 711-712.)

Neither Pabalinas nor Runkle furnish any evidence that the County does not retain "drafts" of any of the indexed e-mails or attachments or describe the public interest in nondisclosure that clearly outweighs public interest in disclosure in this case. (*Golden Door Properties, supra*, 53 Cal.App.5th at p. 790 [county's declarations insufficiently

---

[17] The County provides no explanation why e-mails between the County and a real estate developer and its representatives would contain "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy" (§ 6254, subd. (c)) or "[s]tatements of personal worth or personal financial data required by a licensing agency" (§ 6254, subd. (n)). In keeping with the principle that exemptions are construed narrowly and the burden is on a public agency to justify them, the County cannot resist disclosure merely by citing exemptions and claiming that the requested e-mails must be reviewed to "ensure" that exempted materials are not present. (*California First Amendment Coalition, supra*, 67 Cal.App.4th at p. 167.)

18

specific for reviewing court to weigh public's interest in nondisclosure]; see also *Register Division of Freedom Newspapers, Inc. v. County of Orange* (1984) 158 Cal.App.3d 893, 908 [court could not determine if § 6254, subd. (a), applied because there was no indication documents were not retained by public agency and "the record is silent regarding the competing considerations in balancing disclosure versus nondisclosure interests"].)

Pabalinas and Runkle also maintained that the indexed e-mails must be reviewed for attorney-client privilege. Section 6254, subdivision (k), "allows agencies to withhold '[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege.' [Citation.] By 'its reference to the privileges contained in the Evidence Code,' section 6254(k) 'has made the attorney-client privilege applicable to public records.' [Citation.]" (*Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 291, fn. omitted (*Los Angeles County Supervisors*).) This exemption affords " 'public entities the attorney-client privilege as to writings to the extent authorized by the Evidence Code.' [Citation.]" (*Ibid.*)

The request specified that County e-mails sought were exchanged with four outside e-mail domains. "[A] privilege is waived upon voluntary disclosure of the privileged information to a third party." (*Golden Door Properties, supra*, 53 Cal.App.5th at p. 781, citing *OXY Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 888 (*OXY Resources*).) However, Pabalinas stated in his declaration that "one of the email domains listed is that of a law office with which County Counsel and my office worked closely on the defense of one or more lawsuits in which the County was named as a Defendant. I believe this resulted in the exchange of drafts between my office and that office." "Persons who possess common legal interests may share attorney-client privileged information without waiving the privilege. This principle 'has been variously referred to as the "joint defense" doctrine, the "common

19

interest" doctrine, and the "pooled information" doctrine.' [Citation.]" (*Golden Door Properties, supra*, at p. 781.) " ' " '[F]or the common interest doctrine to attach, most courts seem to insist that the two parties have in common an interest in securing legal advice related to the same matter—and that the communications be made to advance their shared interest in securing legal advice on that common matter.' " ' [Citation.]" (*Id.* at pp. 781-782.)

The County attempted to flesh out its contention that the common interest doctrine might apply with the declaration of Moebius. Moebius stated that, on June 21, 2018, the Friends of El Dorado County Oaks filed a petition for writ of mandate naming the County as respondent and Serrano (i.e., Parker) as real party in interest.[18] Moebius declared that "the interests of El Dorado County and Parker Development Company were aligned in this lawsuit, and we intended to work together on a common defense thereto. [¶] . . . In working towards a resolution in the matter [of] Friends of El Dorado County, the County of El Dorado maintained a joint defense relationship and shared a common interest with Hefner Law in the course and scope of their representation of their client Parker Development Company. During this relationship, we intended that any correspondence or communication relating to the subject matter of that case made between the two parties would retain any privileged status that it might originally have had. [¶] . . . In particular, any correspondence shared between my office and the attorneys for Parker Development at Hefner, Stark, would be considered work product. Additionally, to the extent that

---

[18] Getz contends that, regarding "the alleged common interest with Hefner law, that review would be quite limited, from June 21, 2018 forward, which is the date of the alleged joint defense relationship with the Hefner law firm." However, the common interest doctrine protects prelitigation communications between codefendants on matters at issue in subsequent litigation. (*California Oak Foundation v. County of Tehama* (2009) 174 Cal.App.4th 1217, 1222-1223; *OXY Resources, supra*, 115 Cal.App.4th at p. 890.)

attorney-client documents were shared, we intended they would remain privileged and confidential."

Thus, the County asserts a basis for the common interest doctrine limited to e-mails (1) with the Hefner law firm, which owns one of the four domains defining the scope of Getz's request, (2) regarding the suit involving Friends of El Dorado County and the Serrano Village J Lot H Project. The common interest doctrine is not asserted as a basis to exempt e-mails with any of the other three domains or on any other subject matter. Assuming that attorney-client privileged materials were shared between the County and the Hefner firm in defense of the suit, this evidence does not support a claimed need to review all 42,852 indexed e-mails. The subset of e-mails that might be exempt should be readily identifiable by Hefner appearing as sender or recipient and the subject matter line of the e-mail referencing the litigation.

Further, Moebius stated that Parker and the County "*intended* to work together on a common defense," (italics added) suggesting that a common defense of the suit was not actually undertaken and privileged information was not shared or not shared to the extent it might have been if the case were fully litigated. This suggestion is reinforced by Moebius's statement that the County and Hefner maintained a joint defense and common interest while "working toward a resolution" of the petition, indicating the suit was resolved without extensive litigation.[19] Further, Moebius carefully referred to "*any* correspondence" (italics added) shared by the Hefner firm and the County as covered by

---

[19] This circumstance may explain why the County did not assert the exemption under section 6254, subdivision (b), for "[r]ecords pertaining to pending litigation to which the public agency is a party . . . until the pending litigation or claim had been finally adjudicated or otherwise settled." (See *Board of Trustees of California State University v. Superior Court* (2005) 132 Cal.App.4th 889, 899 ("[S]ection 6254(b) only applies to litigation-related documents while litigation is pending. Documents exempt from disclosure while litigation is pending are subject to disclosure under the [Act] once the litigation has ended"].)

21

a common interest, but did not identify any shared correspondence and did not state that e-mail correspondence between Hefner and the County existed or to what extent it existed. Regarding "attorney-client documents," Moebius stated only that "to the extent" they "were shared," they would remain privileged and confidential.

The Moebius declaration falls short in carrying the County's burden to show that a review of the 42,852 e-mails on the index was necessary to determine if the privilege exemption under section 6254, subdivision (k), applied. Getz's request defined a universe of documents in which any privilege held by the County ordinarily would be waived by disclosure in an e-mail with the third parties utilizing the four domains. The County's evidence that the privilege was not waived by application of the common interest doctrine only extended to a discrete subset of the e-mails requested, failed to identify any e-mails or documents covered by the doctrine, and was equivocal regarding whether such e-mails or documents even existed.

Moreover, the common interest doctrine extends only to communications " ' " 'made to advance [a] shared interest in securing legal advice on that common matter.' " ' " (*Golden Door Properties, supra*, 53 Cal.App.5th at p. 782.) The California Supreme Court in *Los Angeles County Supervisors* emphasized that the attorney-client privilege "does not apply to every single communication transmitted confidentially between lawyer and client. Rather, the heartland of the privilege protects those communications that bear some relationship to the attorney's provision of legal consultation." (*Los Angeles County Supervisors, supra*, 2 Cal.5th at p. 294; see also *Wood v. Superior Court* (2020) 46 Cal.App.5th 562, 581 [the attorney-client privilege "requires something more than simply speaking to an attorney about a legal matter"].) Thus, not every communication between the Hefner law firm and the County about the project would fall under the exemption in section 6254, subdivision (k), by application of the common interest privilege.

22

For these reasons, we conclude the trial court erred in finding that the County's refusal to produce the text of the 42,852 indexed e-mails was justified because Getz's request was "overbroad and unduly burdensome."[20]

Our dissenting colleague asserts that the "relevant inquiry" is not whether the County can show the request under the Act calls for exempt or privileged material but how burdensome it is for the County to make that determination. (Dis. opn., *post*, at p. 5.) We disagree. The County must make some showing that exempt or privileged information exists in the records requested, especially, where, as here, that seems unlikely. The County cannot simply declare that it must always review every responsive e-mail to determine if any, or part of any, contain exempt or privileged information. Since the volume of e-mail correspondence in the modern era will always be an order of magnitude greater than notes, memoranda and correspondence by letter formerly sought in a request under the Act, the argument that the County must review every e-mail furnishes a ready-made "overly burdensome" response justifying a public agency's refusal to respond to a request under the Act for e-mails. Perhaps the Legislature should consider the ease with which electronic records such as e-mails can be identified and the burden imposed when such records are requested in volume, but existing statutes do not make such burden a basis for refusing disclosure. Absent statutory changes, public agencies can reduce the potential burden by identifying and segregating potentially exempt records when they are created.

The dissent also maintains that the County's declarations establish the need to review each e-mail for exempt or attorney-client or common interest privileged information. (Dis. opn., *post*, at p. 6.) Again, we disagree. The County's declarations

---

[20] Because we conclude that the e-mails on the County's index must be produced, we do not address Getz's request for remand to conduct discovery on the County's claim of undue burden in making the indexed e-mails readable.

23

fall short, not even providing a single example of exempt or privileged information in responsive e-mails. Moreover, the dissent fails to acknowledge that the County's declarations regarding privilege hedge whether any privileged e-mails or attachments exist, acknowledging that the matter on which the County's and the developer's interests "were aligned" did not proceed to litigation.

Finally, the dissent diminishes the importance to the public of the issue Getz's request addresses, i.e., improper cooperation between County government and officials and a prominent real estate developer in the County. (Dis. opn., *post*, at p. 5.) Land use decisions by county government are of great, not hypothetical, interest to the relevant public, county residents. (See *County of Santa Clara v. Superior Court* (2009) 170 Cal.App.4th 1301, 1323-1324 [catchall exemption did not apply to request for disclosure of county's geographic information system basemap data, which would contribute to comparisons of property tax assessments, permit issuance, treatment of tax delinquent properties, equitable deployment of public services, and zoning variances].)

*False Police Report Investigation*

We conclude the trial correctly found that the County met its burden of establishing that records related to the district attorney's review of an investigation of Getz's involvement in filing a false police report were exempt under section 6254, subdivision (f), of the Act. This provision exempts from disclosure the records of "investigations conducted by . . . any state or local police agency" or "any investigatory or security files compiled by any state or local police agency, or investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes." (§ 6254, subd. (f).)

In the trial court, Getz contended that section 6254, subdivision (f), did not apply because the statute of limitations had run so there was no prospect that anyone would be charged with a misdemeanor. In applying the exemption, the trial court cited *Williams v. Superior Court* (1993) 5 Cal.4th 337 (*Williams*), where the California Supreme Court

held "the exemption for law enforcement investigatory files does not end when the investigation ends." (*Id.* at p. 355; see also *Rivero v. Superior Court* (1997) 54 Cal.App.4th 1048, 1059; *Rackauckas v. Superior Court* (2002) 104 Cal.App.4th 169, 175-176.)

On appeal, Getz has abandoned this argument and now cites the portion of section 6254, subdivision (f), providing that "local law enforcement agencies shall disclose . . . the statements of all witnesses, other than confidential informants, to the victims of the incident, or an authorized representative thereof, an insurance carrier against which a claim has been or might be made, and any person suffering bodily injury or property damage or loss, as the result of the incident caused by arson, burglary, fire [etc.] . . . unless the disclosure would endanger the safety of a witness or other person involved in the investigation, or unless disclosure would endanger the successful completion of the investigation or a related investigation."

Getz omits the portion of this subdivision regarding disclosure of witness statements to the "victim" of the "incident." Getz reads this provision as a broad exception to the exemption for any nonconfidential witness statement sought by any requester under the Act. Since the district attorney disclosed the names of witnesses interviewed in his review of the false police report investigation, Getz argues that statements obtained from these witnesses—assuming such statements exist—must be disclosed to him.

The California Supreme Court observed that "[t]hese provisions for mandatory disclosure from law enforcement investigatory files represent the Legislature's judgment, set out in exceptionally careful detail, about what items of information should be disclosed *and to whom*." (*Williams, supra*, 5 Cal.4th at p. 361, italics added.) Getz makes no attempt to argue that he falls within the group of persons enumerated in section 6254, subdivision (f), as entitled to witness statements.

25

In any case, Getz failed to raise this exception to the exemption in the trial court.[21] Thus, the trial court had no opportunity to apply the statute to evidence regarding whether Getz qualified as a person to whom witness statements must be disclosed. " 'As a general rule a party is not permitted to change its position on appeal and raise new issues not presented in the trial court. [Citation.] This is particularly true "when the new theory depends on controverted factual questions whose relevance thereto was not made to appear" in the trial court. [Citation.]' " (*Alfaro v. Community Housing Improvement System & Planning Assn.* (2009) 171 Cal.App.4th 1356, 1396.) This rule applies to a request under the Act. (*Humane Society of U.S. v. Superior Court* (2013) 214 Cal.App.4th 1233, 1272 ["It would be unfair to allow [the requester] to change theories on appeal by asserting new interests in disclosure"].)

In addition, we observe that if Getz claimed that he was a victim of the "incident," i.e., that he was victimized by a false police report, the record appears to be the other way around. Getz was apparently investigated for filing a false police report.

We conclude the trial court properly denied Getz's petition for production of documents related to the district attorney's review of the investigation of a false police report involving Getz.

## DISPOSITION

The petition is granted in part and respondent court is ordered to vacate that portion of its order denying Getz's request under the Act for production of e-mails to and from four enumerated e-mail domains and order the County to produce the text of e-mails

---

[21] In two sentences in his reply brief submitted below, Getz contended: "Specifically, the March 2019 letter identifies documents that must be produced. These include, at a minimum, interviews with Nadine Lauren, Erin Walsh, John Yoffie, and Jim Pridemore." However, Getz did not mention section 6254, subdivision (f), regarding disclosure of witness statements. At the hearing, his legal counsel confined his discussion to the statute of limitations argument.

and any attachments on the County's index of 42,852 responsive e-mails.  The County shall pay Getz's "costs and reasonable attorney fees" in an amount to be determined by the trial court.  (§ 6259, subd. (d); see also *Pacific Merchant Shipping Assn. v. Board of Pilot Commissioners etc.* (2015) 242 Cal.App.4th 1043, 1053 [partially prevailing petitioner entitled to attorney fees and costs]; accord *Los Angeles Times v. Alameda Corridor Transportation Authority* (2001) 88 Cal.App.4th 1381, 1391-1392.)  Getz is also entitled to costs in this original proceeding.  (Cal. Rules of Court, rule 8.493.)


                                          /s/

                                        RAYE, P.J.


I concur:


     /s/

BLEASE, J.

KRAUSE, J., Concurring and Dissenting.

I concur in part and dissent in part.

I respectfully disagree with the conclusion reached by my colleagues that it is not unduly burdensome to require the County of El Dorado (County) to review more than 42,000 e-mails, spanning nearly six years, that are potentially responsive to petitioner Dean Getz's (Getz) unfocused request for "any/all emails" by or between "anyone" employed by the County of El Dorado and "anyone" at one of four e-mail domains associated with a real estate developer, its legal counsel, and its public relations consultants. I instead would conclude that, when properly balanced, the burden on the County clearly outweighs the public interest underlying this request.

*Legal Background*

The California Public Records Act (Gov. Code, § 6250 et seq.)[1] (the Act) creates " 'a presumptive right of access to any record created or maintained by a public agency that relates in any way to the business of the public agency.' " (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616, italics omitted.) But the basic rule requiring disclosure of public records is subject to a number of specific exemptions. (§ 6254.) The Act also includes a catchall provision, invoked by the County here, exempting records from disclosure if "the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure." (§ 6255, subd. (a).)

In reviewing a trial court's ruling under section 6255, we examine the facts of the case as found by the trial court and determine independently from those facts whether the public interest in nondisclosure clearly outweighs the public interest served by production of the records. (*Michaelis, Montanari & Johnson v. Superior Court* (2006) 38 Cal.4th

---

[1]     Undesignated statutory references are to the Government Code.

1

1065, 1072 ["a reviewing court should weigh the competing public interest factors de novo, [accepting] as true the trial court's findings of the 'facts of the particular case' [citation], assuming those findings are supported by substantial evidence"].)

This court previously has addressed how to weigh the public interest in the balance under section 6255. "If the records sought pertain to the conduct of the people's business there is a public interest in disclosure. The weight of that interest is proportionate to the gravity of the governmental tasks sought to be illuminated and the directness with which the disclosure will serve to illuminate." (*Citizens for a Better Environment v. Department of Food & Agriculture* (1985) 171 Cal.App.3d 704, 715 (*Citizens*).) "[I]n assigning *weight* to the general public interest in disclosure, courts should look to the 'nature of the information' and how disclosure of that information contributes to the public's understanding of government." (*Humane Society of U.S. v. Superior Court* (2013) 214 Cal.App.4th 1233, 1268, original italics; see also *Connell v. Superior Court* (1997) 56 Cal.App.4th 601, 616 ["The existence and weight of [the] public interest are conclusions derived from the nature of the information"].)

These cases reveal that the "breadth of a request may affect the balancing of interests required by section 6255. The public interest in nondisclosure may be less where the request is carefully focused and confined to a few documents." (*California First Amendment Coalition v. Superior Court* (1998) 67 Cal.App.4th 159, 166, fn. 3 (*California First*).) Hence, "[t]he request to the agency must itself be focused and specific." (*Rogers v. Superior Court* (1993) 19 Cal.App.4th 469, 481, fn. omitted.)

Requests made under the Act "inevitably impose some burden on government agencies." (*California First, supra*, 67 Cal.App.4th at p. 166.) However, a request may be unduly burdensome under section 6255 if it "compels the production of a huge volume of material." (*California First*, at p. 166.)

"When weighing the benefits and costs of disclosure, any expense or inconvenience to the public agency may properly be considered. [Citation.]" (*Bertoli v.*

*City of Sebastopol* (2015) 233 Cal.App.4th 353, 372.)  As our Supreme Court has recognized, "[s]ection 6255 speaks broadly of the 'public interest,' a phrase which encompasses public concern with the cost and efficiency of government.  To refuse to place such items on the section 6255 scales would make it possible for any person requesting information, for any reason or for no particular reason, to impose upon a governmental agency a limitless obligation.  Such a result would not be in the public interest." (*American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 453 (*American Civil Liberties Union Foundation*), fn. omitted; see also *State Bd. of Equalization v. Superior Court* (1992) 10 Cal.App.4th 1177, 1188-1189.)  The "burden of segregating exempt from nonexempt materials," in particular, is a valid consideration which the court may take into account in weighing the benefits and costs under section 6255. (*American Civil Liberties Union Foundation, supra*, at p. 453, fn. 13.)

*Analysis*

The evidence before the trial court established that Getz is "concerned about the management of Serrano [El Dorado Owners Association] and Parker[ ] [Development Company's] management role," as well as the County's "potential involvement in the doings of Serrano and contact with Serrano and/or contact with Parker."  However, this legitimate government integrity concern morphed into an unfocused request for almost six years' worth of communications between any of the County's 1,800 employees, including attorneys within the offices of the county counsel and district attorney, and any one of four external e-mail domains, including that of a law firm which had a common interest or joint defense arrangement with the County for a portion of the relevant time period.

For its part, the County introduced evidence that it expended substantial time and effort trying to identify responsive records, as it had on Getz's previous request, and worked with Getz to satisfy or narrow his request under the Act, but Getz refused to refine or limit his request in any way, insisting that all 42,582 e-mails on a preliminary

3

index prepared by the County were responsive and must be produced, notwithstanding the burden this would impose on County employees who would have to spend 40 to 50 business days, or hundreds of hours, reviewing those records to segregate any exempt or privileged communications.[2]

The majority concludes that as long as records can be "located with reasonable effort and the volume of material [is] not unmanageable," a public records request is not overbroad or unduly burdensome.[3] (Maj. opn. *ante*, at p. 14.) In reaching their conclusion, they criticize the trial court's focus on the burden of "reviewing the collected and indexed e-mails to determine which were responsive to the request." (Maj. opn. *ante*, at p. 14.) The majority finds that the public agency opposing disclosure bears the burden of proving that an exemption applies, and that it cannot resist disclosure based on the burden of reviewing potentially responsive documents to segregate exempt from nonexempt materials. (Maj. opn. *ante*, at pp. 12-14 & p. 18, fn. 16.) My colleagues also opine that "existing statutes do not make such burden a basis for refusing disclosure" and suggest that the Legislature could address this issue. (*Id*. at p. 23.)

There is no need for legislative intervention, however. Our Supreme Court already has told us that "[t]he burden of segregating exempt from nonexempt materials . . . remains one of the considerations which the court can take into account in determining whether the public interest favors disclosure under section 6255." (*American Civil Liberties Union Foundation, supra*, 32 Cal.3d at p. 453, fn. 13; see also *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1345 ["whatever merit

---

[2]     These time estimates were based in part on experience gained in fulfilling Getz's previous records request.

[3]     My colleagues find that this test is met here because the "County produced without objection an index of 42,582 e-mails that fit the criteria of the request, thereby demonstrating that the records could be located with reasonable effort and the volume of material was not unmanageable." (Maj. opn. *ante*, at p. 14.)

disclosure might otherwise warrant in principle is simply crushed under the massive weight of the Times's request in this case: the newspaper seeks almost five years of the Governor's calendars and schedules, covering undoubtedly thousands of meetings, conferences and engagements of every conceivable nature. We are not persuaded that any identifiable public interest supports such a wholesale production of documents"].) Here, the trial court considered the burden of reviewing nearly six years of e-mails and reasonably concluded that Getz's request was "overbroad and unduly burdensome." The trial court's conclusion is supported by substantial evidence.

The majority faults the County for failing to provide sufficient evidence that specific exemptions will apply, but the evidence shows that the exempt and privileged e-mails have not yet been identified and segregated. Thus, the relevant inquiry at this stage is not whether the County can show particular exemptions or privileges necessarily will apply, but how burdensome it will be, on balance, for the County to determine whether all 42,582 e-mails are in fact "public records," and whether specific exemptions or privileges may be asserted. In short, my colleagues fail to measure the weight of the public interest or to balance it against the burden of review.

Even assuming for the sake of argument that all of the e-mails at issue relate to County business, a fact which is not at all clear, substantial evidence supports the need for predisclosure review of all the e-mails and their attachments to ensure that any records produced are responsive,[4] nonexempt, and nonprivileged public records—a function that our Supreme Court has said may be placed on the scale under section 6255. (See *American Civil Liberties Union Foundation, supra*, 32 Cal.3d at pp. 452-453 [trial

---

[4]      Only one page of the e-mail index that Getz received was included in the record, but 17 of the 29 e-mails listed on that page appear to be internal county communications rather than e-mails to or from one of the four domains that Getz identified in his request. It is therefore possible that the majority's ruling will result in the production of numerous e-mails that are not even responsive to Getz's request.

courts may weigh "any expense and inconvenience involved in segregating nonexempt from exempt information"].) Specifically, the County's declarations establish the need to assess the applicability of exemptions under section 6254, including the attorney-client or common interest privilege, and thoroughly document the burden, expense, and inconvenience to the County associated with sorting and reviewing such a significant volume of records.

On the other side of the scale, Getz speculates, but offers no evidence to show, that the 42,582 e-mails sought will serve to illuminate collusion between County officials and private developers. The mere existence of communications between County employees and a developer and its public relations or legal counsel does not ipso facto establish the existence of "grave public matters in which the public has a substantial interest in disclosure." (*Citizens, supra*, 171 Cal.App.3d at p. 715.) And Getz fails to explain how his demand for almost six years' worth of communications with any County department on any topic, no matter how mundane or routine, will contribute to the public's understanding of government. His rationale seems to be that if he casts his net wide enough, he will uncover evidence of collusion or corruption. This is a very indirect path to Getz's government integrity objective, significantly reducing the weight of the public interest in the balance under section 6255. (See *Citizens*, at p. 715.)

Where the documented burden of segregating exempt material from nonexempt is substantial, and the public interest in disclosure is speculative and ill-defined, the public agency appropriately may conclude that the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure. Under the rule articulated by the majority, however, there would be nothing to stop a requestor from demanding several years' worth of e-mails from a public entity broadly relating to any topic, regardless of the "limitless obligation" the request might impose, as long as the agency's computer software could identify e-mails that fit the criteria of the request.

6

(*American Civil Liberties Union Foundation, supra*, 32 Cal.3d at p. 453.) I do not find statutory or case law support for such a rule.

Based on the foregoing, I agree with the trial court that Getz's request is overbroad and unduly burdensome. The substantiated burdens on the County—expense, time, and inconvenience—to review the initial batch of potentially responsive e-mails clearly outweigh the speculative benefit underlying Getz's unfocused records request. Thus, I would affirm the trial court's ruling on this issue. (See *Times Mirror Co. v. Superior Court, supra*, 53 Cal.3d at p. 1345; see also *Bertoli v. City of Sebastopol, supra*, 233 Cal.App.4th at pp. 361, 371-372.)

_____/s/_____

Krause, J.

7

Filed 12/13/21

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

DEAN GETZ,

        Petitioner,

    v.

THE SUPERIOR COURT OF EL DORADO COUNTY,

        Respondent;

COUNTY OF EL DORADO et al.,

        Real Parties in Interest.

|     |
| --- |
| C091337 |
| (Super. Ct. No. PC20190335) |
| ORDER CERTIFYING OPINION FOR PUBLICATION |

ORIGINAL PROCEEDING in mandate. Petition granted in part. Michael J. McLaughlin, Judge.

Freeman Mathis & Gary, Gregory T. Fayard and Jonathan M. Romvary for Petitioner.

No appearance for Respondent.

Spinelli, Donald & Nott and Lynn A. Garcia for Real Parties in Interest.

1

THE COURT:

The opinion in the above-entitled matter filed November 17, 2021, was not certified for publication in the Official Reports.  For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


_____/s/_____
RAYE, P. J.


_____/s/_____
BLEASE, J.


_____/s/_____
KRAUSE, J.